UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-21032-CIV-ALTONAGA/Reid

Enlai Zhu,

     *Plaintiff*,

v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

     *Defendants*.

_____/

## SECOND AMENDED COMPLAINT

Plaintiff Enlai Zhu ("Plaintiff" or "Zhu") hereby files this Second Amended Complaint against the Partnerships and Unincorporated Associations Identified on Schedule A ("Defendants") and alleges as follows:

### INTRODUCTION

1. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's trademark. The trademark has been registered with the United States Patent and Trademark Office, and it is valid, subsisting, and in full force and effect.

2. Defendants create numerous e-commerce stores that are advertising, offering for sale, and selling infringing and counterfeit Plaintiff's registered trademark products to unknowing consumers. Defendants attempt to avoid liability by concealing their identities, the full scope, and interworking of their illegal activities. These e-commerce stores share distinctive

1

identifiers, such as design elements and the similarities among the infringing products they offer, establishing a clear connection between them. This connection suggests that Defendants' unlawful activities arise out of the same transaction, occurrence, or series of transactions or occurrences.

3. Plaintiff is forced to file this action to combat Defendants' infringement on Plaintiff's registered trademark as well as to protect unknowing consumers from purchasing infringing products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. This Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Florida, through their fully interactive e-commerce stores operating under the seller aliases ("Seller Aliases") identified in Schedule A, which will be filed as an exhibit hereto under seal.

6. Specifically, Defendants purposefully availed themselves to do business with Florida residents by operating one or more interactive e-commerce stores, through which Florida residents can purchase infringing products bearing Plaintiff's federally registered trademark.

Each of the Defendants has targeted sales from Florida residents by operating online stores that offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered trademark. Each of the Defendants committed tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

## THE PARTIES

**Plaintiff**

7. Plaintiff is an individual residing in Shanghai, China.

8. Plaintiff is the owner of all rights, title, and interest in the registered trademark. The registration is valid, subsisting, unrevoked, unchallenged, and uncancelled. A true and correct copy of Plaintiff's registered trademark will be attached to the Amended Complaint as **Exhibit 1** (filed under seal).

**Defendants**

9. Defendants are individuals, partnerships and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified in Schedule A attached hereto and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

10. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A. Tactics used by

Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCTS

11. The success of Plaintiff's registered trademark has resulted in significant counterfeiting and infringement. Plaintiff has identified numerous e-commerce stores offering infringing products on online marketplace platforms such as Walmart, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers throughout the United States, including Florida and in this Judicial District.

12. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. Intellectual Property Rights Seizure Statistics, Fiscal Year 2021, U.S. Customs and Border Protection (attached hereto as **Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China. *Id*.

13. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." See Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT' L L.&BUS. 157, 186 (2020) (attached hereto as **Exhibit 3**); see also

report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) (attached hereto as **Exhibit 4**) and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. Ex. 4 at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." Ex. 3 at pp. 186-187.

14.   On information and belief, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers, including Florida, using one or more Seller Aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold infringing products to residents of Florida.

15.   Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online merchants. E-commerce stores operating under the Seller Aliases look

5

sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use its trademark, and none of the Defendants are authorized retailers of genuine Products bearing Plaintiff's registered trademark.

16. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing and counterfeiting operation, and to avoid being shut down.

17. Furthermore, e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally,

6

infringing products sold by the Seller Aliases bear similar irregularities, suggesting that the infringing products were from a common source and that Defendants are likely interrelated.

18. E-commerce store operators like Defendants are in constant communication with each other via Chinese social media apps such as QQ and WeChat, and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

19. Infringers and counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

20. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use Plaintiff's registered trademark in connection with the advertisement, distribution, offering for sale, and sale of infringing products into the United States and Florida over the Internet.

21. Defendants' unauthorized use of Plaintiff's registered trademark in connection with the advertising, distribution, offering for sale, and sale of infringing products, including the sale of the infringing products into the United States, including Florida, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. § 1114)

22. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21 of this Amended Complaint as though fully set forth herein.

23. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of the federally registered trademark in connection with advertising, promoting, sales, offering for sale, distribution, and/or advertising of infringing goods.

24. Plaintiff is the exclusive owner of the trademark. Plaintiff's United States Registration for the trademark is in full force and effect. Plaintiff's registered trademark is a highly distinctive mark. Consumers have come to expect great quality from products bearing the trademark.

25. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using Plaintiff's trademark without Plaintiff's permission. On information and belief, Defendants have knowledge of Plaintiff's rights in the registered trademark and are willfully infringing and intentionally using the trademark without Plaintiff's permission. Defendants' willful, intentional, and

unauthorized use of the trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of infringing products among the general public.

26. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of infringing products.

27. Plaintiff has no adequate remedy at law. Unless Defendants' infringing actions are enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and to the goodwill of its trademark.

### COUNT II - FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125 (a))

28. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21 of this Amended Complaint as though fully set forth herein.

29. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit and/or infringing products by Plaintiff.

30. By using the trademark in connection with the sale of counterfeit and/or infringing products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the infringing products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the registered trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is a counterfeit product or is not authorized by Plaintiff to be sold in connection with the registered trademark;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine authorized product or any other product originated from Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the registered trademark;

   c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the registered trademark and damaging Plaintiff's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear any of

      Plaintiff's registered trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof, or Plaintiff's registered trademark;

   f. using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bear Plaintiff's registered trademark;

   g. operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear Plaintiff's registered trademark;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Etsy, DHgate, and Temu (collectively, the "Third Party Providers"); sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiff's registered trademark;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization Plaintiff's registered trademark; and

    c.  take all steps necessary to prevent links from Defendants' Internet Stores from displaying in search results, including, but not limited to, removing links to Defendants' e-commerce stores from any search index;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(b);

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $200,000 per type of goods sold using Plaintiff's registered trademark;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, and other applicable law;

6) Award any and all other relief that this Court deems just and proper;

March 14, 2025

Respectfully submitted,

/s/ Andrew J. Palmer
Andrew J. Palmer
Palmer Law Group, P.A.
401 E Las Olas Blvd, Suite 1400
Fort Lauderdale, FL 33301
Phone: 954-771-7050
ajpalmer@palmerlawgroup.com