**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-21032-CIV-ALTONAGA/Reid**

**ENLAI ZHU**,

      Plaintiff,

v.

**THE PARTNERSHIPS, AND**
**UNINCORPORATED ASSOCIATIONS**
**IDENTIFIED ON SCHEDULE A**,

      Defendants.

_____/

**ORDER**

THIS CAUSE came before the Court on Plaintiff, Enlai Zhu's *Ex Parte* Motion for Entry

of a Temporary Restraining Order, including a Temporary Injunction and a Temporary Asset

Restraint [ECF No. 15], pursuant to 15 U.S.C. section 1116, Federal Rule of Civil Procedure 65,

The All Writs Act, 28 U.S.C. section 1651(a), and the Court's inherent authority.  The Court has

carefully considered the Motion, the record, and the governing law.   For the reasons stated

below, the Motion is granted.

**I.        Factual Background**

Plaintiff is the owner of the 尚官 trademark (referred to herein as the "SHANGGUAN"

mark), U.S. Trademark Registration No. 7,465,986, which is valid and was registered on the

Principal Register of the United States Patent and Trademark Office on August 6, 2024.  (*See*

United States Trademark Registrations for the SHANGGUAN mark [ECF No. 13]; *see also*

Declaration of Enlai Zhu [ECF No. 14] ¶ 3).  The SHANGGUAN mark is used in connection

with various towel products, especially with compressed travel and facial towels.  (*See id*. at ¶ 6).

Defendants, through internet-based e-commerce stores operating under their store aliases identified on Schedule A appended hereto, have advertised, promoted, offered for sale, or sold goods using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the SHANGGUAN mark.  (*See id.* ¶¶ 8-9 (Plaintiff "has confirmed that the two Defendants, who are selling identical items through the same product link, are operating online storefronts on the Walmart.com e-commerce platform.")).  Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of Plaintiff's Marks.  (*See id.* ¶ 12 ("[N]one of Defendants hold the status of authorized retailer." (alteration added)); *see also id.* ¶ 14 ("[Plaintiff has] not licensed or authorized these Defendants to use the SHANGGUAN trademark, and none of the Defendants are authorized retailers of genuine SHANGGUAN Products." (alteration added)).

Further, Plaintiff's counsel "reviewed the images and depictions displayed on the websites, including the domain name, product listing, information of the product, and detailed seller information of the sellers identified on Schedule A" (Declaration of Andrew Palmer in Support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order [ECF No. 15-1] ¶ 4); and "[a]fter reviewing the infringing evidence," counsel believes "it is apparent that the activities of the sellers identified in Schedule A are consistent with the general patterns of online counterfeiting activities" (*Id.* ¶ 5 (alteration added)).

## II.   <u>Legal Standard</u>

In order to obtain a temporary restraining order, a party must demonstrate that "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest."  *Schiavo*

*ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (alteration added); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).  Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  An *ex parte* temporary restraining order "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

### III.   Conclusions of Law

The declarations Plaintiff has submitted in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order support the following conclusions of law:

A.   Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the SHANGGUAN mark; and (2) the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear and/or use copies of the SHANGGUAN mark.

B.   Because of the infringement of the SHANGGUAN mark, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Motion for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage,

and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1.      Defendants own or control e-commerce stores operating under their stores aliases which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights;

2.      There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for their genuine products; and

3.      There is good cause to believe that if Plaintiff proceeds on notice to Defendants of this Motion for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify their e-commerce stores registration and account data and content, change payment accounts, redirect consumer traffic to other online stores, and transfer assets and ownership of the online stores, thereby thwarting Plaintiff's ability to obtain meaningful relief.

C.      The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

D.      The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

CASE NO. 25-21032-CIV-ALTONAGA

E.      Under 15 U.S.C. section 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of the SHANGGUAN mark. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under [section] 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (alterations added))).

F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.      In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of Plaintiff's Complaint, Motion for Temporary Restraining Order, and supporting evidentiary submissions, and pursuant to 15 U.S.C. section 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. section 1651(a), and the Court's inherent authority, it is

**ORDERED AND ADJUDGED** that Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a Temporary Injunction and a Temporary Asset Restraint [ECF No. 15] is **GRANTED** under the terms set forth below:

CASE NO. 25-21032-CIV-ALTONAGA

 1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them are temporarily enjoined and restrained from:

 a. using Plaintiff's SHANGGUAN mark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine SHANGGUAN product or not authorized by Plaintiff to be sold in connection with Plaintiff's SHANGGUAN mark;

 b. passing off, inducing, or enabling others to sell or pass off any product as a genuine SHANGGUAN product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's SHANGGUAN mark;

 c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

 d. further infringing Plaintiff's SHANGGUAN mark and/or damaging Plaintiff's goodwill;

 e. otherwise competing unfairly with Plaintiff in any manner; and/or

 f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's SHANGGUAN trademark or any reproductions, counterfeit copies or colorable imitations thereof.

2.      Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

3.      Any third-party providers, including PayPal, Payoneer and Walmart, Inc. shall, within two (2) business days of receipt of this Order, for any of Defendants or any of Defendants' Online Marketplace Accounts or websites:

a.      locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any financial accounts connected to the information listed in Schedule A attached hereto and any email addresses provided for Defendants by third parties; and

b.      restrain and enjoin any such accounts or funds from transferring or disposing of money or any other assets belonging to Defendants until further ordered by this Court.

4.      Pursuant to 15 U.S.C. section 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post bond in the amount of $1,000.00 as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further order of the Court. In the Court's discretion, the bond may be subject to increase in the interest of justice.

5.      Any of Defendants subject to this Order may appear and move to dissolve or modify the Order on two-days' notice to Plaintiff or on shorter notice as set by this Court.

6.      Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

7.      This Order shall remain in effect for 14 days from the date of this Order and shall be of no further effect commencing April 8, 2025.

CASE NO. 25-21032-CIV-ALTONAGA

8.     After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, the Motion, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the e-commerce stores operating under their store aliases, or by providing a copy of this Order by e-mail to the registrar of record or marketplace website for each of the e-commerce stores so that the registrar and marketplace website, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, Plaintiff shall post copies of the Complaint, the Motion, and this Order, as well as all other documents filed in this action on the website located at

https://cloud.palmerlawgroup.com/index.php/s/vbjrP6h4CLTcHqt and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.  Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at

https://cloud.palmerlawgroup.com/index.php/s/vbjrP6h4CLTcHqt, or by other means reasonably calculated to give notice which is permitted by the Court.

9.     Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores and/or financial institutions, payment processors, banks, escrow services, and money transmitters, and marketplace platforms, including but not limited to, PayPal, Payoneer, and Walmart, Inc., and their related companies and affiliates shall, at

CASE NO. 25-21032-CIV-ALTONAGA

Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective e-commerce stores.

       10.    The Clerk shall file this Order under **SEAL** until further order of the Court.

      **DONE AND ORDERED** in Miami, Florida, this 26th day of March, 2025.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

[Schedule A on following pages]

**Schedule A Defendants**

| Def. # | Seller Aliases | Defendants' Walmart Stroe URLs |
|--------|----------------|-------------------------------|
| **1** | Ctrlall | https://www.walmart.com/seller/101576001 |
| **2** | Rwvbm Pro Seller | https://www.walmart.com/seller/101597997 |